## **AFFIDAVIT FOR SEARCH WARRANT**

I, Paul Altenburg, being sworn, hereby depose and state as follows:

 1. I am a Special Agent with Homeland Security Investigations (HSI). HSI is a directorate within Immigration and Customs Enforcement (ICE). ICE is a subordinate component of the Department of Homeland Security (DHS), a department in the executive branch of the United States of America. ICE is the successor to many of the law enforcement powers of the former Immigration and Naturalization Service and the former U.S. Customs Service.

 2. I am assigned to HSI's Office of the Resident Agent in Charge (RAC) Burlington, VT. I have been employed as a Special Agent since May 2010. I attended and graduated from the Criminal Investigator Training Program, at the Federal Law Enforcement Training Center in Glynco, Georgia. I have also received specialized training related to the investigation of money laundering and other financial crimes related to drug trafficking. Prior to my career with HSI, I was employed as a special agent with the Department of Homeland Security, Office of Inspector General (OIG) and Environmental Protection Agency, OIG. In connection with my duties as Special Agent, I have participated in various aspects of investigatory work, including but not limited to undercover surveillance and undercover narcotics purchases. I have conducted investigations regarding fraud, public corruption, weapons trafficking and drug smuggling. I have participated in several narcotics-related arrests and the execution of many narcotics-related searches, and I frequently utilize the services of informants and other confidential sources of information. I have written affidavits in applications for search warrants, arrest warrants, and Global Positioning System (GPS) tracking warrants.

3. I submit this affidavit to establish probable cause in support of a search warrant authorizing the search of the residence of Marcellus Lame STEPHENS a/k/a "SKI"), located at 106 Center Road, in Essex, VT 05452 (the SUBJECT PROPERTY). The SUBJECT PROPERTY is described with greater particularity herein and in attachment A. I believe there is probable cause to search the SUBJECT PROPERTY for evidence relating to violations of the Controlled Substances Act, specifically the distribution of methamphetamine, and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a). The items to be seized are listed in Attachment B.

4. The information contained within this affidavit is based upon my training, experience, and investigation, as well as information that has been conveyed to me by other law enforcement officers. The following is either known to me personally or has been related to me by persons having direct knowledge of the events described below, including other law enforcement officers involved in this investigation. Since this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every fact known to me concerning this investigation.

**Probable Cause**

5. Law enforcement is investigating the distribution of methamphetamine in the Chittenden County, Vermont area by Marcellus STEPHENS and others.

6. In February 2020, the Vermont Drug Task Force began an investigation into the distribution/sale of methamphetamine in the Chittenden County area by Marcellus STEPHENS. VDTF Detective Michael DeFiore debriefed a Confidential Informant, hereinafter referred to as CI[1], who advised that it had purchased methamphetamine from STEPHENS (whom the CI

---

[1] CI is working with the Vermont Drug Taskforce for consideration for financial remuneration which is not contingent upon the identity of the target of this investigation. CI advised that it was a long-time user

knows as "SKI") within the last month at the SUBJECT PROPERTY. VDTF DeFiore showed the CI a known picture of STEPHENS from a traffic stop in November 2019. The CI confirmed the person depicted in the picture was STEPHENS, a/k/a/ SKI. The CI also provided to the VDTF STEPHEN's mobile phone number, 267-621-1960, further referenced below.

7. During the week of February 16, 2020, VDTF Detective DeFiore met with the CI at a pre-determined meeting location in an effort to arrange a controlled purchase of a quantity of methamphetamine from STEPHENS. The CI advised that prior to meeting with investigators it had contacted STEPHENS at 267-621-1960 via text messages and phone calls, and that STEPHENS had methamphetamine for sale. The CI showed VDTF Detective DeFiore its cell phone reflecting text messages and calls with "SKI" shortly before our meeting with the CI. The texts indicated that the CI was on its way to meet STEPHENS to purchase methamphetamine. VDTF Detective DeFiore photographed the texts on the CI's phone. The CI advised it arranged to meet STEPHENS at the SUBJECT PROPERTY for the purchase.

8. VDTF Detective DeFiore briefed the CI on the objectives of the investigation and the safety plan. VDTF Detective DeFiore conducted a search of the CI and no contraband was located. The CI's personal currency was removed and retained for the duration of the controlled purchase. VDTF Detective DeFiore conducted a search of the CI's vehicle and no contraband or currency was located. VDTF Detective DeFiore provided the CI with prerecorded Task Force Funds for the purchase of the methamphetamine. The CI was also equipped with audio and video recording and transmitting devices.

---

of heroin and cocaine, and is in a recovery program. CI has State of Vermont convictions for the following offenses: violations of conditions of release, assault-simple (two counts), petit larceny $900.00 or less, false info-LE officer/implicate another, vehicle operation-license suspended/OSC (three counts), disorderly conduct-fight, possession of drug paraphernalia, and possession of cocaine. CI has provided credible information in the past leading to numerous State and Federal search warrants and arrests.

9. The CI traveled a pre-determined route to meet STEPHENS at the SUBJECT PROPERTY while under continual observation by a surveillance team. The CI also was continually monitored via the audio and video transmitting devices.

10. The surveillance team observed the CI arrive at the SUBJECT PROPERTY in his vehicle, get out of the vehicle, and enter the SUBJECT PROPERTY. Members of the surveillance team then observed the CI leave the SUBJECT PROPERTY, get back into its vehicle, and begin traveling toward the pre-determined meeting location.

11. At the pre-determined meeting location VDTF Detective DeFiore met with the CI. The CI turned over to VDTF Detective DeFiore 3.64 grams of suspected methamphetamine. VDTF Detective DeFiore later field tested the suspected methamphetamine, and the test yielded a positive result for methamphetamine. Det. DeFiore searched the CI again and found no other contraband and no money.

12. On February 26, 2020 Det DeFiore utilized the CI to obtain video and audio recordings from the occupants of the SUBJECT PROPERTY, one of whom was STEPHENS. After equipping the CI with video and audio equipment, it was surveilled entering the SIBJECT PROPERTY. Exiting the building several minutes later, the CI was debriefed by Det. DiFiori and stated that there were *"a couple ounces"* of methamphetamine visible on a table in the residence. Upon reviewing the video footage, a large amount of a white crystal substance appearing to be methamphetamine was visible on a table as described by the CI.

13. On February 27, 2020, VDTF Detective Sgt Robinson photographed the property located at 106 Center Road in Essex, VT. 106 Center Road is a white, two-story single-family home with an attached single car garage and covered front porch. The entrance to 106 Center Road is located on the east side of the building adjacent to the driveway. The building is

accessed via a red door on the east side of the residence. *See* Exhibit 1. The residence is accessed via a red door on the north side of the residence. *See* Exhibit 2.

14. A criminal record check of STEPHENS revealed he has an active non-extraditable arrest warrant out of the state of Pennsylvania for a probation violation with an underlying offense of *Dangerous Drugs*.

15. Investigators propose to execute the search warrant this evening. The SUBJECT PROPERTY is under ongoing law enforcement surveillance. Persons have been coming and going from the property, the scene is difficult to control, and methamphetamine may be being trafficked. Evidence may be lost with further delay.

## Additional Information

16. Based on my training, experience, and participation in other controlled substances investigations, I know the following:

   a) Both small and large scale drug traffickers often maintain, on hand, large amounts of U.S. Currency in order to finance their ongoing drug business;

   b) Controlled substance traffickers commonly maintain books, records, receipts, notes, ledgers, electronic/digital data, common carrier tickets, money orders, and other documents relating to the transportation, acquisition and distribution of controlled substances;

   c) Controlled substance traffickers commonly provide controlled substances on consignment to their clients;

   d) The aforementioned books, records, receipts, notes, ledgers, etc. are commonly maintained where controlled substance traffickers can have ready access to them;

e) It is common for both small and large scale drug traffickers to secret contraband, proceeds of drug sales, and records of transactions in secure locations within their residence and/or other residences, either vacant or occupied by other members of the trafficking conspiracy (stash houses), and/or their businesses, to conceal them from law enforcement authorities;

f) Persons involved in both small and large scale drug trafficking commonly conceal in their residences, stash houses and businesses caches of drugs, large amounts of currency, financial instruments (including stocks, bonds, certificates of deposit, etc.), precious metals, jewelry, automobile titles, other items of value and/or proceeds of drug transactions and evidence of financial transactions relating to the attainment and concealment of large sums of money acquired from engaging in narcotic trafficking activities;

g) When drug traffickers amass proceeds from the sale of drugs, the drug traffickers commonly attempt to legitimize these profits, i.e. "launder" the profits; to accomplish these goals, drug traffickers many times utilize domestic and foreign banks and/or financial institutions with their attendant services, including sales of securities, cashiers checks, money drafts, letters of credit, etc.; that other entities used to "launder" monies include brokerage houses, real estate firms, shell corporation and purported legitimate business fronts;

h) It is common practice for both small and large scale narcotic traffickers to travel to distribution areas to purchase and otherwise facilitate their trafficking; that after purchasing controlled substances, the traffickers will transport or cause to be transported narcotics to areas in which they will distribute them; and that the methods of

transportation include, but are not limited to trains, commercial airlines, ocean-going vessels, private airplanes, rental and private automobiles, and government and contract mail carriers;

i) Narcotics traffickers commonly maintain address or telephone numbers in books, documents and electronic/digital devices/media that relate names, addresses and/or telephone numbers of their associates in the trafficking organization;

j) Drug traffickers take or cause to be taken photographs of themselves, their associates, their property and their product, and that the photographs are usually maintained at the residence and/or businesses of the traffickers;

k) The courts have recognized that the unexplained wealth is probative evidence of crimes motivated by greed, in particular trafficking in controlled substances; and

l) Drug traffickers commonly have in their possession (that is on their persons, in their vehicles, and at their residences and/or their businesses), ammunition and firearms, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns, silencers and other weapons; that said ammunition and firearms are used to protect and secure a drug trafficker's property.

## Conclusion

17. Based on the foregoing, I believe probable cause exists to believe that Marcellus STEPHENS engaged in the distribution of controlled substances and possession with intent to distribute controlled substances. Further, probable cause exists to believe that the SUBJECT PROPERTY may contain evidence of this criminal offense; that the SUBJECT PROPERTY may contain contraband and fruits of this crime; and that

the SUBJECT PROPERTY may contain property designed for use, intended for use, or that has been used in committing this crime.

Dated at Burlington, in the District of Vermont, this 27 day of February, 2020.

                                              PAUL ALTENBURG
                                              HSI Special Agent

Sworn and subscribed before me this 27th day of February 27, 2020

                                              HONORABLE JOHN M. CONROY
                                              United States Magistrate Judge